UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**UNITED STATES OF AMERICA**,         Criminal Case No. 3:05-CR-00187-KI

       Plaintiff,

                      OPINION AND ORDER

             v.

**MICHAEL LEE BOYLES**,

       Defendant.

     S. Amanda Marshall
     United States Attorney
     District of Oregon
     Pamala R. Holsinger
     Assistant United States Attorney
     1000 SW Third Avenue, Suite 600
     Portland, Oregon  97204-2902

       Attorneys for Plaintiff

Page 1 - OPINION AND ORDER

>   Michele L. Kohler
>   Attorney at Law
>   4380 SW Macadam Avenue, Suite 500
>   Portland, Oregon  97239
>
>      Attorney for Defendant

KING, Judge:

Defendant Michael Lee Boyles is charged with two counts of Transportation with Intent to Engage in Criminal Sexual Activity in violation of 18 U.S.C. § 2423(a), two counts of Travel with Intent to Engage in Illicit Sexual Activity in violation of 18 U.S.C. § 2423(b), and one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and 2252A(b)(2).  In this motion, Boyles moves to suppress evidence obtained from the execution of multiple search warrants.  He argues the affidavits supporting the search warrants fail to establish probable cause if the factual misrepresentations and omissions are corrected.

Boyles was a juvenile probation officer with the Oregon Youth Authority ("OYA").  The OYA asked the Oregon State Police ("OSP") to investigate accusations against Boyles of inappropriate conduct with juveniles on his caseload.  OSP Detectives Davenport and Poggi began the initial investigation in November 2002 and ended it in January 2003 because of lack of cooperation from the alleged victim, J.D.  The final report concluded the allegations against Boyles "appear to be non-criminal at this time."  Mem. in Supp. of Def.'s Mot. to Suppress Ex. F, at 8 [hereinafter Def.'s Mem.].

About a year later, on November 12, 2003, J.D. contacted OSP Detective Sudaisar and offered to explain what happened between himself and Boyles.  Detective Sudaisar reopened the investigation and ultimately obtained four search warrants between February 9, 2004 and

January 19, 2005 to search Boyles' person, his car, his apartment, a utility closet at his apartment complex, a rented storage unit, and his sister's residence.

Boyles claims the search warrants are invalid because Detective Sudaisar recklessly made material misstatements and omissions of facts in his affidavits supporting the requests for the search warrants. For the purpose of this motion, Boyles focuses on the affidavit submitted in support of the first search warrants on February 9, 2004 because all subsequent search warrants relied on this affidavit in large part. Boyles seeks a <u>Franks</u> hearing to challenge the sufficiency of the affidavit. For the reasons below, I deny Defendant's Motion to Suppress Evidence and for a <u>Franks</u> Hearing [94].

## LEGAL STANDARDS

In <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), the Supreme Court held that, under certain circumstances, a defendant is entitled to an evidentiary hearing in which he can attack the veracity of a search warrant affidavit or challenge the omission of material facts in the affidavit. When a defendant seeks a <u>Franks</u> hearing "based on allegations of material false statements or omissions in an affidavit supporting a search warrant, a defendant must make a substantial preliminary showing that false or misleading statements were (1) deliberately or recklessly included in an affidavit submitted in support of a search warrant; and (2) necessary to the finding of probable cause." <u>United States v. Flyer</u>, 633 F.3d 911, 916 (9th Cir. 2011) (internal quotations omitted).

More specifically, five requirements must be satisfied before a defendant is entitled to a hearing under <u>Franks</u>:

> (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of

>proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; and (5) the challenged statements must be necessary to find probable cause.

United States v. Perdomo, 800 F.2d 916, 920 (9th Cir. 1986). The effect of the misrepresentations and omissions on the existence of probable cause is considered cumulatively. United States v. Stanert, 762 F.2d 775, 782 (9th Cir.), amended on other grounds, 769 F.2d 1410 (9th Cir. 1985). If, after a hearing, the defendant establishes by a preponderance of the evidence that the false statements or omissions were intentional or reckless, and the remaining material in the affidavit is insufficient to support a finding of probable cause, the search warrant is invalidated and the evidence suppressed. Franks, 438 U.S. at 156.

## DISCUSSION

I.   J.D.'s Background

Boyles claims Detective Sudaisar omitted J.D.'s convictions and other criminal behaviors from the affidavit, thus providing the court with less information to objectively weigh J.D.'s veracity.

The government correctly argues the affidavit states J.D. was under the supervision of a juvenile probation officer, lived in a foster home, smoked marijuana, and was interviewed at Inverness Jail in 2002.

Boyles provides the report from an investigator's interview of J.D.'s former girlfriend, who informed the investigator J.D. was the biggest liar she had ever met. The interview was held in November 2005, nearly 20 months after Detective Sudaisar drafted the affidavit. There is no evidence Detective Sudaisar was aware of J.D.'s girlfriend, her November 2005 opinion of J.D.'s truthfulness, or whether she held the same low opinion in February 2004.

Page 4 - OPINION AND ORDER

Boyles's memorandum filed in support of this motion describes J.D.'s alleged crime spree from June 2003 through February 25, 2004, but provides no offer of proof. Moreover, the last three events described took place after Detective Sudaisar drafted the affidavit.

In light of the information the affidavit does provide about J.D.'s juvenile criminal history, and other sources' corroboration of some of J.D.'s statements, the court had sufficient information to weigh J.D.'s veracity. The probable cause analysis was not affected by the omission of more particulars about his background.

II.     Boyles' Caseload

Boyles claims Detective Sudaisar recklessly included prejudicial conclusions based on the earlier OSP investigation and failed to explain the OYA structure. Specifically, Boyles objects to these statements in the affidavit: (1) Detectives Davenport and Poggi "learned that several of Michael Boyles' co-workers had expressed concerns about his apparent preference for male juvenile probationers that were 'clean cut between the ages of 13 and 17[,]'" Def.'s Mem. Ex. A, at 3 [hereinafter Sudaisar Aff.]; and (2) John Powell, a former supervisor of Boyles, told Detective Davenport "there were rampant office rumors and jokes about Michael Boyles surrounding the type of probationers that he liked to spend time with, which included children who were clean-cut between the ages of 13 and 17." Id. at 6.

Boyles contends Detective Sudaisar failed to explain to the court that an OYA caseworker typically only supervises delinquent children between the ages of 13 and 17, approximately 80 percent of which are male. Moreover, the caseworker cannot pick his probationers because they are assigned as an internal function of the OYA.

The government argues the affidavit contains no misrepresentation and attributes the comments to office rumors and jokes, thus allowing the court to give the information the weight it is worth. The government claims the court could easily infer that a juvenile probation officer supervises children between the ages of 13 and 17, making the omission immaterial.

I agree with the government's analysis concerning the role of a juvenile probation officer. I also note Boyles provides no offer of proof to support his argument about how juveniles are assigned to probation officers and whether a probation officer has any input on the assignment. Moreover, Detective Sudaisar labeled the office rumors as such. There is no evidence he misrepresented anything reported to him.

Accordingly, there is no evidence of a deliberate or reckless misrepresentation or omission, and any omission is immaterial to the probable cause analysis.

III.    Dino San Augustine

In the affidavit, Detective Sudaisar identified Dino San Augustine as a former co-worker of Boyles. Sudaisar Aff. 5. Boyles claims this is a material misrepresentation because Dino San Augustine did not work for the OYA with Boyles; instead, he was a Child Support Division ("CSD") caseworker handling dependency matters and was also a foster parent.

According to the government, Boyles worked with Dino San Augustine years earlier, before OYA existed and the juvenile probation officers were CSD employees. Thus, the government maintains there is no misrepresentation and no effect on the probable cause analysis.

Boyles has provided no offer of proof to the contrary. There is no evidence of a misrepresentation.

Detective Sudaisar stated, "Dino San Augustine told me that Jim Lyman took some of these boys on trips to Mexico." Sudaisar Aff. 5. Boyles objects to Detective Sudaisar omitting the fact that Dino San Augustine himself took his foster boys on trips to Hawaii. According to Boyles, the omission misleads the court to infer that out of state travel of foster children was improper or a policy violation at the time.

The government contends the addition of travel by another foster parent to a location inside the United States, as opposed to a foreign country, does not change the probable cause analysis.

I note the affidavit also includes Dino San Augustine's comment that when the boys returned, they told stories of alcohol consumption and sexual activity. I disagree that the affidavit gives the impression the trip itself violated a policy. Dino San Augustine's comments, read in whole, provide the court with information that Boyles took the foster boys away from an environment where other adults knew them and could supervise them to some extent. The trips allowed Boyles to ply the foster boys with alcohol, thus leading to sexual activity. There is no evidence that Dino San Augustine's trips ever included alcohol consumption and sexual activity by foster children. I find that the omission of Dino San Augustine's own trips with foster boys does not change the probable cause analysis.

Boyles submitted the February 1999 Recertification Home Study of Lyman's foster home,[1] arguing it refutes the allegation that Lyman permitted marijuana or alcohol use by foster children while in Mexico. I am unpersuaded; there is no indication the agency looked into this issue at all.

---

[1] Boyles submits two certifications of Lyman's home done in 1995 and 1998 and argues Detective Sudaisar should have provided this information in the affidavit. Boyles claims the affidavit begins by derogating Boyles' character through his association with Lyman. Neither the addition of this material, nor the omission of any mention of Lyman and his foster home, would have changed the probable cause analysis concerning Boyles.

Page 7 - OPINION AND ORDER

There is also no evidence Detective Sudaisar was aware of the study. In the affidavit, he reported the statements of Dino San Augustine, labeled as such. There is no misrepresentation.

Detective Sudaisar stated Dino San Augustine told him "he has never known Boyles to accept a juvenile female to his caseload, which is strange because boys and girls are regularly mixed on worker's caseloads." Sudaisar Aff. 6. Boyles claims Detective Sudaisar did not review Boyles' case files to corroborate whether the statement was true. Boyles also explains that a female caseworker, Angel Harp, supervised the bulk of the female probationers but Detective Sudaisar omitted this information from the affidavit.

Boyles did not provide an offer of proof about his case assignments to support his argument. Detective Sudaisar attributed the statement to Dino San Augustine in the affidavit and did not present it as a fact culled from the OYA records. Thus, there is no misrepresentation. The information is in the nature of the office rumors and jokes discussed above. The additional information about the female probation officer would not change the probable cause analysis.

IV.     Boyles' Relationship with J.D.

Detective Sudaisar stated Detectives Davenport and Poggi learned "of concerns about Michael Boyles spending more time and money on certain children than others, buying them meals, clothing, etceteras, even at the exclusion of other children that were on his caseload and were living within the same household(s)." Sudaisar Aff. 3. Boyles argues Detective Sudaisar failed to review the OYA files to corroborate this conclusory statement or to see if the expenditures were questioned during routine OYA audits.

Boyles did not file an offer of proof based on his review of OYA files to demonstrate any falsity in this statement. Detective Sudaisar did not state Boyles spent extra government funds on

Page 8 - OPINION AND ORDER

certain children; Boyles could have been spending personal funds which would not have shown up in a review of OYA files. The OSP January 2003 investigative report gives details corroborating the affidavit's statement. Detectives Davenport and Poggi interviewed two foster parents, Roxanne Bagley and Darlene Burks, who both stated Boyles treated some boys with favoritism, including spending more time and money on them, compared to other children located in the house who also were on Boyles' caseload. Boyles has not made a substantial showing that the statement is false or misleading.

Detective Sudaisar stated that a former foster parent and Joe Mesteth, one of Boyles' former supervisors, both told Detectives Davenport and Poggi that J.D. had been living with Boyles after being removed from his caseload. Sudaisar Aff. 6. Boyles contends the statement implies the living arrangement was inappropriate or criminal. He argues Detective Sudaisar intentionally omitted the history of the occurrence: (1) J.D. was given a limited opportunity to reside with Boyles when he was 20 years old and could no longer live with his mother while on supervision by Clackamas County; and (2) Boyles' supervisor at the time, Mesteth, knew of the situation and believed it was unusual but not a violation of any policy or regulations.

The government notes the affidavit includes J.D.'s statement that he had lived with Boyles for several years and as recently as November 2003. The government argues any additional details about J.D. living with Boyles would have only added to the facts supporting probable cause.

I agree with the government. The affidavit includes the information, attributed to the two sources, in a brief sentence without elaboration. It explains a continuing relationship between J.D. and Boyles and does not imply that the current living arrangement is inappropriate or criminal.

Page 9 - OPINION AND ORDER

Furthermore, a legal relationship with a 20-year-old could have begun as an illegal relationship with a minor. There is no misrepresentation and no effect on the probable cause analysis.

Detective Sudaisar stated J.D. told Detectives Davenport and Poggi in an interview at the Inverness Jail on November 18, 2002 that Boyles had physically and sexually abused him. Sudaisar Aff. 7. Boyles argues Detective Sudaisar intentionally omitted the details of the abuse J.D. reported in the interview, namely, Boyles attempted to touch J.D.'s shoulder while driving and, on another occasion, J.D. believes Boyles was reaching to touch his penis but J.D. was able to avoid him.

The government claims the additional detail would have only added to the facts supporting probable cause. I note a few more details contained in the investigative report of the interview. The shoulder-touching incident occurred when Boyles pulled off I-84 to the freeway emergency lane and attempted to touch J.D. on the shoulder. The second incident occurred when J.D. exited the shower at Boyles' house and found Boyles standing in the bathroom. Boyles tried to touch J.D.'s penis, causing J.D. to jump back and ask Boyles what he was doing. Boyles said he would never try to touch J.D. again, drove to a bank, and opened an account for J.D. with $2,000.

The addition of all these details further supports a finding of probable cause.

V.      Shawn Dougherty

Boyles claims Detective Sudaisar stated in his affidavit that J.D. told him he began to spend nights at Boyles' residence when he was approximately 13 years old. Boyles notes contradictory information from Shawn Dougherty, J.D.'s mother, which he claims Detective Sudaisar disregarded to shade the truth in the affidavit. Boyles misreads the affidavit, however. Detective Sudaisar stated J.D. told him he has known Boyles, and used marijuana with Boyles, since J.D. was

13 years old.  The affidavit said nothing about J.D. spending nights with Boyles since he was 13 years old.  There is no false statement.

Boyles notes Detective Sudaisar did not include in the affidavit Shawn Dougherty's statement in her interview with Detective Sudaisar that J.D. told her, "I'm sick of this, I just want everybody to leave me alone, nothing ever happened."  Def.'s Supplemental Ex. List Ex. K, at 54 [hereinafter Def.'s Supp. Ex. List].  I agree with the government it is clear from the interview, and the fact that J.D. refused to discuss the situation for a year, that J.D. was not yet ready to talk about the abuse when he made the statement to his mother.  Detective Sudaisar explains J.D.'s reluctance in the affidavit, and states that J.D. eventually contacted him because J.D. wanted to tell Detective Sudaisar "what really happened" with Boyles.  Sudaisar Aff. 7.  In the context of everything else in the affidavit, this omission was not material to the probable cause analysis.

In his affidavit, Detective Sudaisar recounts how Boyles would abuse J.D. on Friday evenings, when Boyles picked J.D. up at the bus depot, and on Sunday mornings before taking J.D. to the bus depot for the return trip to his group home in Eugene.  J.D. spent the middle of the weekend with Shawn Dougherty.  When Shawn Dougherty talked to Detective Sudaisar, she told him she usually took J.D. back to the bus on Sunday, but that Boyles did it at times because the two shared the effort.

I do not see a misrepresentation that would mislead a reasonable judge.  The affidavit does not emphasize that Boyles was with J.D. every single Sunday morning or that sex abuse only occurred on Sunday morning when J.D. lived in Eugene.  Shawn Dougherty could not pinpoint her arrangement with Boyles for transportation.  There is no dispute that J.D. spent Friday evenings

with Boyles while Shawn Dougherty was at work.  The equivocal statement from Shawn Dougherty would not have affected the probable cause analysis.

VI.     Trazodone

When Detective Sudaisar interviewed J.D., he stated Boyles often gave him trazodone before the sex abuse, and that J.D. was less than fully alert for about half of the abuse incidents. Boyles claims J.D.'s trazodone claims are implausible enough that they would have raised significant questions if added to the affidavit.

There is an issue on the date of the interview.  The cover sheet, provided by counsel, states the interview was conducted on December 23, 2003 but the official transcript states it took place on December 23, 2004, which is ten months after Detective Sudaisar applied for the search warrants.  If the second date is correct, Detective Sudaisar would not have known about the trazodone.  I will assume the earlier date is correct because it is during the time frame when Detective Sudaisar did most of his investigation.

Boyles raises several questions based on the length of time trazodone would affect a person. He does not provide an offer of proof, however, and is only speculating.

Boyles submitted J.D.'s discharge summary from the group home in Eugene.  The summary states that J.D. had clean UAs while at the group home.  There is no information, however, of when the UAs took place.  J.D. stated he was alert for about half of the sex abuse incidents.  There is also no evidence Detective Sudaisar was aware of the discharge summary or the results of J.D.'s UAs.  Boyles has not made a substantial preliminary showing that Detective Sudaisar intentionally or recklessly omitted information material to the probable cause analysis.

VII.  J.D.'s Statements

Boyles argues Detective Sudaisar was selective in his choice of J.D.'s statements to relate in the affidavit, making J.D. sound like a more believable figure than the raw transcripts of his interviews show.

In the affidavit, Detective Sudaisar stated J.D. found a videotape in Boyles' house containing child pornography with two teenage, naked boys engaging in sexual activity.  Boyles claims J.D.'s assessment of the age of the boys was "sketchy at best."  Def.'s Supplemental Mem. at 5.  J.D. told Detective Sudaisar, "They were young, like me, my age.  Like no more than–no older than eighteen at the time when I popped in those videos when I was like fifteen–no, I was like sixteen.  No older than sixteen years old, they could not have been."  Def.'s Supp. List Ex. J, at 50. Detective Sudaisar did not make a misrepresentation when he summarized this statement as the participants being teenage boys.

Boyles also points to J.D.'s statements to Detective Sudaisar that Lyman owned snuff films and Boyles might own them also.  Boyles argues that common sense dictates this is implausible, and the statement should have been included in the affidavit so the judge could use it to weigh J.D.'s credibility.  Considering the allegations against Boyles at the time and his later convictions, the statement does not strike me as implausible.  I see no error in omitting it.  The addition of the comment would not have affected the probable cause analysis.

VIII.  Brandi Dougherty

In the affidavit, Detective Sudaisar stated that Brandi Dougherty, J.D.'s sister, found marijuana in Boyles' bedroom and that he typically kept marijuana on hand.  Detective Sudaisar does not mention Brandi Dougherty elsewhere in the affidavit.

Page 13 - OPINION AND ORDER

Boyles contends Detective Sudaisar should have included in the affidavit the evidence of Brandi Dougherty's admitted animus toward Boyles. When Detective Sudaisar interviewed Brandi Dougherty, she told him that she never got along with Boyles, that Boyles manipulated Shawn Dougherty, and that Brandi Dougherty had to step up to the plate to try to take care of the family when Shawn Dougherty could not.

I agree with the government that including the evidence of Brandi Dougherty's animus toward Boyles would not have changed the probable cause analysis because Brandi Dougherty merely corroborated J.D.'s allegations of marijuana use. Moreover, the marijuana use is a very small part of the allegations, which center on sex abuse. The omission is not sufficient to entitle Boyles to a Franks hearing.

IX.    Summary

"Probable cause exists when, under the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Rodgers, 656 F.3d 1023, 1028 (9th Cir. 2011) (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317 (1983)).

In addition to the information discussed above, Detective Sudaisar's affidavit includes information J.D. told him during three interviews held between November 2003 and January 2004. The affidavit provides graphic details of two years of sex abuse Boyles committed against J.D., beginning when J.D. was about 14 years old. The pages of details include the physical acts of abuse, the locations in which the abuse took place, child pornography J.D. saw at Boyle's house, and descriptions of thousands of dollars Boyles gave J.D. to keep him quiet.

Even though there is an insufficient showing that Detective Sudaisar intentionally omitted or misrepresented facts necessary to a finding of probable cause, I further conclude that even if all of the statements in the affidavit were corrected and supplemented as Boyles requests, it would not overcome the multitude of facts in the affidavit supporting a finding of probable cause.

In summary, Boyles has failed to make a substantial preliminary showing that Detective Sudaisar deliberately or recklessly included false or misleading statements in the affidavit which are necessary to the finding of probable cause, or deliberately or recklessly omitted facts from the affidavit which are material to the probable cause analysis. Boyles is not entitled to a Franks hearing.

## CONCLUSION

Defendant's Motion to Suppress Evidence and for a Franks Hearing [94] is denied.

IT IS SO ORDERED.

Dated this     10th     day of December, 2012.

    /s/ Garr M. King
Garr M. King
United States District Judge